UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN EARL DANNER,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN JOAQUIN, and MANUEL ANDRADE,<br><br>Defendants. | No. 2:15-cv-00887-MCE-EFB<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Jonathan Earl Danner ("Plaintiff") alleges several causes of action against Defendants San Joaquin County and Deputy Manuel Andrade (collectively "Defendants"), arising out of Deputy Andrade's purportedly unlawful arrest of Plaintiff on April 11, 2014. Now before the Court is Defendants' Motion for Summary Judgment or in the Alternative Partial Summary Judgment ("Motion"). ECF No. 40. Defendants' Motion is primarily based on an argument that, because Deputy Andrade is entitled to qualified immunity for any claim surrounding Plaintiff's arrest, all causes of action predicated on his arrest and its aftermath necessarily fail. Plaintiff filed an Opposition to Defendants' Motion (ECF No. 57), and Defendants filed a Reply (ECF No. 59). For the reasons that follow, Defendants' Motion is DENIED as to Plaintiff's first through fifth causes of action, and GRANTED as to the sixth cause of action.[1]

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

1

# BACKGROUND[2]

On April 11, 2014, Deputy Andrade was dispatched to Plaintiff's residence, responding to Plaintiff's call about damage to his pick-up truck. Plaintiff told Deputy Andrade that Plaintiff's wife woke him up that morning when she noticed a white vehicle "revving" its engine outside their house. Plaintiff saw Jonathan Jackson, his former employee, and Jorge Burns, Jackson's acquaintance, in the vehicle. Plaintiff told Deputy Andrade that he put his dog in his pickup truck and went back in his house to get dressed and find a weapon. When Plaintiff came back outside, he found the passenger window of his truck broken, a brick on the passenger seat, and his dog with bleeding lacerations on its forehead. Plaintiff believed Jackson and/or Burns were responsible for breaking the window and injuring his dog.

Either at the same time or immediately before Plaintiff removed his dog from the pickup truck and put it in his backyard, Jackson and Burns drove away, and Plaintiff followed them to Jackson's residence. Plaintiff claims he found their vehicle parked outside of Jackson's residence, and then returned home. On his way home, Plaintiff contacted the San Joaquin County Sheriff's Department to complain of the damage to his pickup truck and inform the police of Jackson and Burns' location. Deputy Andrade was responding to this call when he arrived at Plaintiff's home.

After interviewing Plaintiff, Deputy Andrade drove to Jackson's home and interviewed Jackson as part of his investigation of Plaintiff's complaint. Jackson offered a very different version of events than that related by Plaintiff. Jackson told Deputy Andrade that he had had an argument with Plaintiff earlier that morning at a convenience store after fueling his vehicle, and that he and Plaintiff followed each other, engaging in so-called "road rage," after leaving the store. According to Jackson, about ten minutes

---

[2] Unless otherwise noted, the following recitation of facts is taken from Defendants' Reply to Plaintiff's Opposition to Defendants' Separate Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment or in the Alternative Partial Summary Judgment, ECF No. 59-1.

2

after he got home, Plaintiff showed up at Jackson's house, brandishing a small semi-automatic handgun, and stating, "I got this for you, meet me around the corner."[3] In response, Jackson claims that he threw a rock at Plaintiff which broke the window of Plaintiff's pickup and caused shards of glass to fall on the ground in front of Jackson's home. ECF 40-1 at 9. Jackson claims that Plaintiff then got out of his pickup, "racked" a round into the chamber of his handgun and said, "I got something for you." Jackson claimed that he then threw another rock in Plaintiff's direction and that Plaintiff picked up that rock and threw it back. At that point, according to Jackson, Plaintiff returned to his pickup, obtained a decorative rock, and again threw it at Jackson. Jackson also told Deputy Andrade that Plaintiff had brought his dog along in his truck to Jackson's house.

      Deputy Andrade arrested Plaintiff after interviewing Jackson on suspicion of three crimes: making criminal threats, brandishing a firearm, and making a false police report. At some point he also conducted further interviews with Frankie Danner, Plaintiff's wife, and Horatio Venable, Plaintiff's stepson, examined the physical evidence at the scene, and requested that a San Joaquin County Sheriff's Department evidence technician photograph the evidence.

      Plaintiff ultimately spent six days in the San Joaquin County Jail before his family was able to muster the necessary resources to post bail. On September 25, 2014, all charges against Plaintiff were dropped. Plaintiff nonetheless claims that he continues to suffer severe emotional distress, and has sought treatment for that distress as a result of the incident which continues to affect both his work and personal relationships with his wife and children.

///
///
///
///

---

[3] Plaintiff, for his part, denies ever owning firearms of any kind, let alone brandishing a weapon at Jackson's residence. Danner Dep., 20:6-16; 53:17-21.

3

# STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do

not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

///

///

///

# ANALYSIS

### A. Deputy Andrade Is Not Entitled To Qualified Immunity On Summary Judgment.

Deputy Andrade claims that because he had probable cause to arrest Plaintiff, he is protected by qualified immunity from any of the claims asserted by Plaintiff resulting from the arrest.

Qualified immunity is more than a defense from liability; rather, it is "an entitlement not to stand trial." Saucier v. Katz, 533 U.S. 194, 200 (2001) (internal quotations omitted). To determine if a party is protected by qualified immunity, the court first analyzes whether "a constitutional right would have been violated on the facts alleged," and if so, whether the constitutional right was "clearly established" at the time of the alleged violation. Id. at 201. A defendant is entitled to summary judgment if there is no "evidence sufficient to create a genuine issue as to whether defendant in fact" violated the plaintiff's constitutional rights. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

In false arrest claims, an officer is entitled to qualified immunity if he or she "reasonably but mistakenly conclude[s] that probable cause is present." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (internal quotations omitted). Probable cause to arrest existed if "at the moment the arrest was made…the facts and circumstances within [the officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent" officer in believing the arrestee had committed a crime. Id. at 228 (internal quotations omitted).

Deputy Andrade maintains that he arrested Plaintiff on suspicion of three offenses: making criminal threats (Cal. Pen. Code § 422), brandishing a firearm (Cal. Pen. Code § 417(a)(2)), and making a false police report (Cal. Pen. Code § 148.5). These Penal Code sections provide as follows:

///

///

6

> Cal. Pen. Code § 422: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement…is to be taken as a threat…which…is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety…shall be punished by imprisonment…."
>
> Cal. Pen. Code § 417(a)(2): "Every person who, except in self-defense, in the presence of any other person, draws or exhibits any firearm, whether loaded or unloaded, in a rude, angry, or threatening manner, or who in any manner, unlawfully uses a firearm in any fight or quarrel is punishable…."
>
> Cal. Pen. Code § 148.5: "Every person who reports to any peace officer…that a felony or misdemeanor has been committed, knowing the report to be false, is guilty of a misdemeanor."

Defendants have failed to establish for instant purposes that Deputy Andrade had established probable cause to arrest Plaintiff for any of the three offenses at the moment of Plaintiff's arrest. The Ninth Circuit has consistently held that, "in seeking to establish probable cause, 'officers may not solely rely on the claim of a citizen witness…, but must independently investigate the basis of the witness' knowledge or interview other witnesses.'" United States v. Struckman, 603 F.3d 731, 742 (9th Cir. 2010) (quoting Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 921, 925 (9th Cir. 2001)). The evidence shows that, at the time he actually arrested Plaintiff, Deputy Andrade had neither interviewed anyone besides Jackson and Plaintiff himself nor conducted any physical investigation into the evidence. ECF No. 59-1 ¶ 26.[4] Deputy Andrade's decision to arrest Plaintiff, based on the fact that Jackson's account of what transpired[5]

---

[4] To the extent the Andrade's declaration attached to his Motion may indicate that Andrade interviewed other witnesses and examined other evidence before arresting Plaintiff, that statement contradicts Plaintiff's deposition testimony and itself raises triable issues of fact.

[5] Deputy Andrade's apparent reliance on Jackson's version of events is also problematic given his admission, in deposition, that he had responded to numerous calls regarding disturbing the peace, disorderly conduct, and robbery involving Jackson and his family in the past, while he had had no such previous contacts with Plaintiff. Andrade Dep., 74:17-75:21. Deputy Andrade also provided in his deposition that he knew prior to this incident that Jorge Burns was a "[d]ocumented Norteno gang member." Andrade Dep., 77:3.

was fundamentally at odds with Plaintiff's version of events, therefore violated well-established law that he could not rely solely on Jackson's countervailing claims without further investigation, including interviewing other witnesses.[6] Here it appears that no additional witnesses were interviewed until after Plaintiff was arrested, and as far as the Court can ascertain, virtually all circumstantial evidence was gathered after Plaintiff's arrest as well. At deposition, Deputy Andrade conceded he undertook no investigation after interviewing Plaintiff aside from visually noting the broken window of Plaintiff's vehicle. Andrade Dep., 23:4-20. Deputy Andrade also testified that he arrested Plaintiff immediately after returning to Plaintiff's home after interviewing Jackson at a point not only before he interviewed other witnesses, but also prior to any real investigation into the corroborating details surrounding the incident, like whether Plaintiff's injured dog had left bloodstains inside his vehicle or whether a decorative brick recovered from at or near Jackson's property may have originated in Plaintiff's yard. See Andrade Dep., 28:6-32:10; 73:4-19; 85:8-11; 100:12-19.

Aside from Defendants' failure to show summary judgment is appropriate on the issue of whether Deputy Andrade had probable cause to arrest Plaintiff at the time he actually did so, other factual disputes in this case preclude summary judgment in any event. For example, the parties dispute whether Plaintiff changed the story he told Deputy Andrade, which, if true, could have caused him to lose credibility with the officer. ECF No. 59-1 at ¶¶ 7-9. Defendants claim that Plaintiff gave Deputy Andrade three different versions of what happened, but Plaintiff characterizes the modifications as providing "more detail," not changing the substance of the story. In addition, some of the physical evidence at Jackson's house, including a decorative brick that matched the type Plaintiff had at his own home, might have sufficiently connected Plaintiff to the crimes of arrest, but the parties dispute whether Deputy Andrade examined the physical evidence before or after arresting Plaintiff. Taking Plaintiff's version of the facts as true, as the

---

[6] To the extent Andrade arrested Plaintiff based only on Jackson's countervailing version of events, given the fact that it was clearly established that he could not do so, the Court cannot find that Andrade acted as a "reasonable officer" would have done under the circumstances.

8

Court must do for purposes of this Motion, Deputy Andrade's only basis of probable cause at the moment of Plaintiff's arrest was Jackson's statement, which is insufficient. An officer is "not entitled to summary judgment on the issue of whether [he or she] had probable cause to arrest Plaintiff," nor is an officer "entitled to qualified immunity" in such a situation, "as Ninth Circuit law [has]clearly established that a single citizen's uninvestigated statement is insufficient to create probable cause at the time of…arrest." Medeiros v. County of Merced, 2011 WL 3348050, at *4 (E.D. Cal., Aug. 2, 2011) (citing Arpin, 261 F.3d at 925).

      Defendants argue that the facts, as stated in Defendants' Separate Statement of Undisputed Material Facts ("Statement") (ECF No. 59-1), remain undisputed and thus still support their Motion for Summary Judgment. However, what is integral at this stage is whether Defendants have proven that the undisputed material facts show that Deputy Andrade had established probable cause at the time of arrest, not whether all facts that happen to be listed in their Statement can be characterized as undisputed. For example, Defendants state, "After interviewing Mr. Jackson, ANDRADE returned to DANNER's house. ANDRADE observed decorative bricks identical to those recovered at Jackson's house." ECF No. 59-1 ¶ 21. Plaintiff responds, "Disputed. After interviewing Mr. Jackson Andrade returned to Plaintiff's home and immediately placed Plaintiff under arrest. Andrade then investigated the rocks observing them to be similar to the one recovered from Jackson's house." ECF No. 59-1 ¶ 21. Defendants reply, "The fact as stated by Defendant remains undisputed. The fact, as stated, does not purport to establish the timing of any further investigation." ECF No. 59-1 ¶ 21. However, the fact that Deputy Andrade observed the bricks at some point is not dispositive. Instead, the critical issue is whether he did so before arresting Plaintiff. Although the presence of the decorative brick associated with Plaintiff at Jackson's house is potentially an important piece of physical evidence that could have contributed to a probable cause determination, the undisputed facts fail to unequivocally show that Deputy Andrade investigated the issue before he arrested Plaintiff. Instead, Deputy

Andrade's own deposition testimony is ambiguous: although at times he appears to state he noted the brick prior to arresting Plaintiff, he also indicates explicitly in at least one other portion of the transcript that he did not actually see the brick until afterwards. Andrade Dep., 73: 4-7. In addition, Plaintiff's deposition testimony indicates that Deputy Andrade arrested him immediately after returning from Jackson's home at a point before any further investigation was undertaken. Moreover, Plaintiff claims that when he was arrested, he told Deputy Andrade that Jackson and his co-resident, Jorge Burns, had been stealing decorative bricks from him, which would have explained why an identical brick was noted on or near Jackson's premises. Danner Dep., 52:11-15; 73:4-7.

Without having established corroborating evidence going beyond Jackson's contradictory version of events, Deputy Andrade has nothing more than Jackson's, and Plaintiff's own, statements, which are not a sufficient showing on summary judgment to establish that Deputy Andrade had probable cause to arrest Plaintiff. Struckman, 603 F.3d at 742. Defendants' repeated attempts to recharacterize the facts in their Statement as undisputed has no bearing on the Court's decision on their Motion for Summary Judgment. Too many material facts remain at issue to resolve the case on summary judgment.

### B. Plaintiff Has Not Stated A Viable Cause Of Action For Negligent Infliction Of Emotional Distress.

Negligent infliction of emotional distress is not an independent cause of action in and of itself; rather, it is based on the tort of negligence, therefore requiring that the elements of negligence be met ("The traditional elements of duty, breach of duty, causation, and damages apply."). Spates v. Dameron Hosp. Assn., 114 Cal. App. 4th 208, 213 (Cal. 3d 2003) (internal citations omitted). There are two theories of recovery within negligent infliction of emotional distress: the bystander and direct victim theories. Id. The bystander theory is more common, and applies when the claimant witnessed the defendant's injury of someone closely related to the claimant. Thing v. La Chusa, 48 Cal. 3d 644, 647 (1989). The direct victim theory provides for recovery applies in

limited circumstances, when the defendant assumes a duty owed directly to the plaintiff, or such a duty is "imposed on the defendant as a matter of law, or that arises out of a relationship between the two." Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc., 48 Cal. 3d 583, 590 (1989). California courts limit direct victim recovery to a few certain circumstances—namely, negligent mishandling of corpses, negligent misdiagnosis of a disease that could potentially harm another, and the negligent breach of a duty arising out of a preexisting relationship. Judicial Council of California Civil Jury Instruction, CACI No. 1620.

Plaintiff alleges negligent infliction of emotional distress against Defendants in his sixth cause of action. ECF No. 19 at 8. In their Motion, Defendants argue that Plaintiff's claim is improperly pleaded, because none of Plaintiff's other claims serve as a proper "basis for an independent cause of action for negligent infliction of emotional distress," nor does Plaintiff meet any of the special circumstances laid out in the jury instruction above. ECF No. 40-1 at 15. In his opposition to Defendants' Motion, Plaintiff gives a rather conclusory argument for his entitlement to recovery under a direct victim theory, stating that the cause of action is "not improperly pleaded." ECF No. 57 at 12-13.

Defendants are correct. As discussed above, direct victim recovery for negligent infliction of emotional distress is strictly limited to three situations, and Plaintiff has not shown that he meets any of them. Therefore, Defendants' Motion for Summary Judgment is GRANTED with respect to Plaintiff's sixth cause of action for negligent infliction of emotional distress. Because the Court finds that Plaintiff could not as a matter of law meet any of the three circumstances for pleading negligent infliction of emotional distress through a direct victim theory, Defendants are entitled to adjudication as a matter of law as to Plaintiff's sixth cause of action.

///

///

///

///

**CONCLUSION**

For the above reasons, Defendants' Motion for Summary Judgment or in the Alternative Partial Summary Judgment (ECF No. 40) is DENIED as to Plaintiff's first through fifth causes of action, and GRANTED as to Plaintiff's sixth cause of action for negligent infliction of emotional distress. Plaintiff's sixth cause of action is DISMISSED with prejudice.

IT IS SO ORDERED.

Dated: March 20, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE