# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN EARL DANNER,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN JOAQUIN and MANUEL ANDRADE,<br><br>Defendants. | No. 2:15-cv-00887-MCE-EFB<br><br>**MEMORANDUM AND ORDER** |

Through the present lawsuit, Plaintiff Jonathan Earl Danner ("Plaintiff") seeks damages against Defendants San Joaquin County and Deputy Manuel Andrade (collectively "Defendants"), arising out of Deputy Andrade's purportedly unlawful arrest of Plaintiff on April 11, 2014. Plaintiff asserts causes of action for violations of his federal and state civil rights and further alleges claims for malicious prosecution and intentional infliction of emotional distress. Plaintiff further alleges that the County of San Joaquin is responsible for Deputy Andrade's actions because he was acting in the course and scope of his employment as a sheriff's deputy at the time he effectuated Plaintiff's arrest.

Now before the Court is Plaintiff's Motion for Summary Judgment or in the Alternative Partial Summary Judgment ("Motion"). ECF No. 64. Plaintiff's Motion hinges on the assertion that because Deputy Andrade lacked probable cause to make the

1

subject arrest, Plaintiff is entitled to judgment as a matter of law. For the reasons that follow, Plaintiff's Motion is DENIED.[1]

**BACKGROUND**[2]

On April 11, 2014, Deputy Andrade was dispatched to Plaintiff's residence, responding to Plaintiff's call about damage to his pick-up truck, a 2002 Chevrolet Silverado. Plaintiff told Deputy Andrade that Plaintiff's wife woke him up that morning after hearing a vehicle "revving" its engine outside their home. Plaintiff claims he then heard Jonathan Jackson, a former employee of Plaintiff's business, Pro Hauling, screaming obscenities. He looked out the window and saw an acquaintance of Jackson's, Jordan Burns,[3] sitting inside a vehicle stopped on the street outside Plaintiff's home. After terminating Jackson's employment with his company several months previously, Jackson had already broken the window of Plaintiff's vehicle during an altercation between the two men.

Plaintiff told Deputy Andrade that he then proceeded to rush outside. According to Plaintiff, he put his dog in his pickup truck and then went back inside the house to get dressed and find some kind of weapon (like a baseball bat) to protect himself. Plaintiff heard the sound of breaking glass as he came back outside. Plaintiff then discovered that the passenger window of his truck was broken. He saw a brick on the passenger

///

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

[2] Unless otherwise noted, the following recitation of facts is taken from Plaintiff's' Reply to Defendants' Opposition to Plaintiff's Statement of Undisputed Material Facts, ECF No. 70, and the pertinent deposition transcripts as lodged with the Court. Because the transcripts in this matter were already submitted in conjunction with Defendants' previously filed Motion for Summary Judgment, Defendants' evidentiary objections (ECF No. 67-2) that they were not resubmitted in connection with the present Motion are OVERRULED.

[3] While Plaintiff's Complaint identifies Jackson's acquaintance as "Jorge" Burns, Plaintiff's deposition clarifies that it was in fact Jorge's brother Jordan Burns who was with Jackson on the morning of the incident.

2

seat and observed his dog with bleeding lacerations on its forehead. Plaintiff believed Jackson and/or Burns were responsible for breaking the window and injuring his dog.

Either at the same time or immediately before Plaintiff removed his dog from the pickup truck and put it in his backyard, Jackson and Burns drove away, and Plaintiff followed them to Jackson's residence. Plaintiff claims that once he found the vehicle parked outside of Jackson's residence, he tried to return home but had a flat tire as a result of his wheel being slashed and ultimately had to switch cars. On his way home, Plaintiff contacted the San Joaquin County Sheriff's Department to complain of the damage to his pickup truck and inform the police of Jackson and Burns' location. Deputy Andrade was responding to this call when he arrived at Plaintiff's home.

Andrade interviewed Plaintiff for some 20 to 30 minutes in order to ascertain what had occurred. While Andrade saw the broken passenger window as well as a rock inside the vehicle, he claims Plaintiff's version of events nonetheless appeared to change as questioning continued. Deputy Andrade then drove to Jackson's home and interviewed Jackson, who told a very different story than that related by Plaintiff.

Although Jackson admitted that he had previously broken Plaintiff's windshield (and was paying for the damage) he told Deputy Andrade that the events that morning had begun when he argued with Plaintiff after encountering him at a convenience store while fueling his vehicle. Jackson claimed that when he left the store in his vehicle, Plaintiff followed him in his truck and engaged in unsafe braking maneuvers that appeared to be indicative of so-called "road rage." According to Jackson, about ten minutes after he got home, Plaintiff showed up at Jackson's house, brandishing a small semi-automatic handgun, and stating, "I got this for you, meet me around the corner."[4] In response, Jackson claims that he threw a rock at Plaintiff which broke the window of Plaintiff's pickup and caused shards of glass to fall on the ground in front of Jackson's home. ECF 40-1 at 9. Jackson claims that Danner then got out of his pickup, "racked" a

---

[4] Plaintiff, for his part, denies ever owning firearms of any kind, let alone brandishing a weapon at Jackson's residence. Danner Dep., 20:6-16; 53:17-21. As indicated above, the "weapon" he claims to have looked for before leaving his home was identified as something akin to a baseball bat.

round into the chamber of his handgun and said, "I got something for you." Jackson claimed that he then threw another rock in Danner's direction and that Danner picked up that rock and threw it back. At that point, according to Jackson, Danner returned to his pickup, obtained a decorative rock, and again threw it at Jackson. Jackson also told Deputy Andrade that Plaintiff had brought his dog along in his truck to Jackson's house.

While at Jackson's home, Deputy Andrade observed shattered glass on the ground that appeared to corroborate Jackson's claim that the breakage had occurred at his home. Jackson also pointed out a piece of rock in his neighbor's yard that he claimed Plaintiff had thrown. Given the discrepancies in the version of events offered by Plaintiff as well as the above-enumerated supporting evidence, Deputy Andrade determined that the version of events offered by Jackson was probable. He then returned to Plaintiff's home and arrested Plaintiff on suspicion of three crimes: making criminal threats, brandishing a firearm, and making a false police report. At some point he also conducted further interviews with Frankie Danner, Plaintiff's wife, and Horatio Venable, Plaintiff's stepson, examined the physical evidence at the scene, and requested that a San Joaquin County Sheriff's Department evidence technician photograph the evidence.

Plaintiff ultimately spent six days in the San Joaquin County Jail before his family was able to muster the necessary resources to post bail. On September 25, 2014, all charges against Plaintiff were dropped.

Plaintiff filed the instant lawsuit on April 23, 2015. Defendants initially filed a Motion to Dismiss which was granted in part and denied in part by Memorandum and Order filed December 2, 2015. ECF No. 18. Then, on June 19, 2017, Defendants moved for summary judgment, or in the alternative for summary adjudication of issues, on grounds that because Deputy Andrade had probable cause to arrest Plaintiff given the incident in question, he was entitled to qualified immunity and all causes of action predicated on the arrest and its aftermath necessarily failed. ECF No. 40. Except for
///

4

one cause of action, which the Court found to be lacking on other grounds[5], the Court denied Defendants' Motion on grounds that they failed to establish, as a matter of law, that Andrade had probable cause to arrest Plaintiff for any of the three charged offenses at the moment of his arrest. March 21, 2018 Mem. and Order, ECF No. 62, 7:13-15. The Court found that because Andrade had interviewed only Jackson and Plaintiff and had not conducted any real physical investigation of the evidence, Defendants could not show that the arrest was predicated on anything other than Jackson's contrary version of events. In that regard, the Court cited the Ninth Circuit's decision in United States v. Struckman, 603 F.3d 731 (9th Cir. 2010), which held that "in seeking to establish probable cause, officers may not solely rely on the claim of a citizen witness…, but must independently investigate the basis of the witness' knowledge or interview other witnesses.'" Id. at 742 (quoting Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 921, 925 (9th Cir. 2001). ECF No. 62 at 7:15-19.

In the wake of the Court's denial of Defendants' Motion for Summary Judgment, Plaintiff filed his own motion seeking adjudication as a matter of law on December 31, 2018. ECF No. 64. That motion rests on the assumption that the Court should now rule in Plaintiff's favor because it declined to find for purposes of summary judgment that Defendants had probable cause to arrest Plaintiff.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

---

[5] Plaintiff's Sixth Cause of Action, for negligent infliction of emotional distress, failed simply because Plaintiff had not demonstrated the prerequisites for stating such a claim.

5

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

Defendants initially oppose Plaintiff's Motion for Summary Judgment on timeliness grounds. As they point out, the Court's operative Pretrial Scheduling Order sets the last day for filing dispositive motions as "no later than one hundred eighty (180) days after the close of discovery. See ECF No. 24, 4:11-12. Since the Scheduling Order equates the close of discovery with fact discovery, and because fact discovery closed on October 17, 2017 (see ECF No. 63, 1:20-22), barring relief accorded by the Court Plaintiff had until April 7, 2018, to file his dispositive motion. He did not do so until

1  December 18, 2018, more than eight months after the cutoff date.  Plaintiff obtained no
2  leave to file his motion late.  Accordingly, Defendants are correct that Plaintiff's motion is
3  untimely and should be denied on that basis alone.[6]
4  Even looking past these obvious procedural deficits, however, Plaintiff's motion
5  fares no better on its substantive merit.  In false arrest claims, an officer is entitled to
6  qualified immunity if he or she "reasonably but mistakenly conclude[s] that probable
7  cause is present."  Hunter v. Bryant, 502 U.S. 224, 227 (1991) (internal quotations
8  omitted).  Probable cause to arrest exists if "at the moment the arrest was made . . . the
9  facts and circumstances within [the officer's] knowledge and of which they had
10 reasonably trustworthy information were sufficient to warrant a prudent man in believing"
11 the arrestee had committed a crime.  Id. at 228 (internal quotations omitted); see also
12 United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007) (finding probable cause
13 "when under the totality of circumstances known to the arresting officers, a prudent
14 person would have concluded that there was a fair probability" that a crime had taken
15 place).  A police officer is accordingly entitled to qualified immunity "if he reasonably
16 believed there to have been probable cause."  Rosenbaum v. Washoe County, 663 F.3d
17 1071, 1076 (9th Cir. 2011).  "Framing the reasonableness issue somewhat differently,
18 the question in determining whether qualified immunity applies is whether all reasonable
19 officers would agree that there was no probable cause . . ."  Id. at 1078.
20 Deputy Andrade maintains that he arrested Plaintiff on suspicion of three
21 offenses: making criminal threats (Cal. Pen. Code § 422), brandishing a firearm (Cal.
22 Pen. Code § 417(a)(2)), and making a false police report (Cal. Pen. Code § 148.5).
23 These Penal Code sections provide as follows:
24 ///
25 ///

---

[6] Plaintiff's Motion also fails to comply with the Court's directive that "[a]bsent leave of court, all issues the parties wish to resolve on summary judgment must be raised in one motion or cross-motion. Should the parties wish to file additional motions for summary judgment, they must seek leave of court." Id. at 4:13-15.  Again, because Defendants filed their own Motion for Summary Judgment on June 19, 2017 (ECF No. 40), Plaintiff should have obtained leave to file this motion but failed to do so.

8

Cal. Pen. Code § 422:

> Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement . . . is to be taken as a threat . . . which . . . is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety . . . shall be punished by imprisonment . . . .

Cal. Pen. Code § 417(a)(2):

> Every person who, except in self-defense, in the presence of any other person, draws or exhibits any firearm, whether loaded or unloaded, in a rude, angry, or threatening manner, or who in any manner, unlawfully uses a firearm in any fight or quarrel is punishable . . . .

Cal. Pen. Code § 148.5:

> Every person who reports to any peace officer . . . that a felony or misdemeanor has been committed, knowing the report to be false, is guilty of a misdemeanor.

As indicated above, the Court denied Defendants' Motion for Summary Judgment on grounds that the defense failed to establish as a matter of matter of law that probable cause for these offenses had been established at the moment Deputy Andrade arrested Plaintiff. ECF No. 62, 7:12-15. The Court found that because Andrade had neither interviewed anyone besides Jackson, or conducted much physical investigation into the evidence, his decision to arrest Plaintiff was largely based only on Jackson's account of what had transpired.[7] The Court pointed out that because those circumstances arguably ran afoul of the Ninth Circuit's mandate that probable cause for purposes of an arrest cannot be established solely on the basis of one witness' testimony without further corroboration (Struckman, supra, 603 F.3d at 742), summary judgment as a matter of law that probable cause was present would be inappropriate.

---

[7] Even in its decision denying Defendants' Motion for Summary Judgment, the Court observed that there was evidence at Jackson's home that supported his version of events. The fact that the parties disputed whether that evidence was examined before or after Plaintiff's arrest, however, presented triable issues precluding summary judgment. See ECF No. 62, 8:23-26.

9

This does not mean that the converse conclusion is necessarily indicated as Plaintiff's motion appears to suggest. Plaintiff maintains that "[n]o evidence exists that could possibly lead a jury to conclude in Defendants' favor that probable cause existed prior to Mr. Danner's arrest. Pl.'s Mot., 9:22-24. The Court disagrees. As set forth above, Deputy Andrade felt that Plaintiff's version of events was inconsistent and changed over the course of his interview with "multiple stories" being provided. Andrade Dep., 47:9-48:1. He also saw Plaintiff's broken passenger window at the time of his initial interview with Plaintiff before he returned after speaking with Jonathan Jackson to arrest him. Moreover, because Andrade saw broken glass on the ground adjacent to Jackson's home, and because Jackson pointed out a rock in his neighbor's yard that he claimed Plaintiff had thrown, that made Jackson's story appear plausible in his estimation, and supported his decision to arrest Plaintiff. Id. at 72:13-74:9.

Consequently, the Court cannot determine as a matter of law that Andrade had no basis for deciding he had probable cause to arrest Plaintiff at the time he did. While the Court is mindful that most of Andrade's investigation, in terms of his interviews with other witnesses and examination of the physical evidence actually occurred after he arrested Plaintiff, there are nonetheless other factors (i.e. the perceived inconsistencies in Plaintiff's version of events as opposed to Jackson's story which Andrade felt was corroborated by both broken glass and a rock pointed out by Danner in his neighbor's yard) that could at least arguably have supported reasonable decision to arrest. Whether those factors were enough to constitute probable cause at the moment

///
///
///
///
///
///
///

Andrade arrested Plaintiff presents a weighing of evidence that must be made by the trier of fact as opposed to being decided as a matter of law on summary judgment.[8]

**CONCLUSION**

For all the above reasons, Plaintiff's Motion for Summary Judgment or in the Alternative Partial Summary Judgment (ECF No. 64) is DENIED.

IT IS SO ORDERED.

Dated: July 18, 2019

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[8] The Court notes, for example, Plaintiff's claim that the glass could have fallen out at Jackson's home, and not initially when his passenger window was broken, simply because Plaintiff had a flat tire (as a result of the tire allegedly being slashed by Jackson and/or Burns) that shook his car and could have resulted in the glass actually becoming dislodged at a later point. Whether that should have prompted Andrade to discount the significance of the broken glass at Jackson's house, however, again presents factual issues beyond the purview of summary judgment. The same holds true for the fact that Andrade was apparently well acquainted with Jackson and his family as a result of having responded to numerous calls in the past to the same location for disturbing the peace, disorderly conduct, and robbery involving Jackson and his family, while he conversely had no such previous contacts with Plaintiff. Andrade Dep., 74:17-75:21. Again, that requires a weighing process not amenable to summary judgment.